## LIEBLER v. CARREL.

1. INTOXICATING LIQUORS — CIVIL DAMAGES — ACTIONS — ISSUES — EVIDENCE — ADMISSIBILITY — TRIAL.

In an action under the civil-damage act for furnishing plaintiff's minor son with intoxicating liquors, if the defense desires to show, in mitigation of damages for injury to plaintiff's feelings, that her purpose in bringing the suit was to harass defendant and aid his competitors, he should directly tender the issue by testimony tending to connect her with such motive; not having done so, he cannot give evidence relating to difficulties of another in obtaining a license for a saloon in a building owned by plaintiff's husband.

2. SAME — CIVIL DAMAGES — REQUESTS TO CHARGE — INSTRUCTIONS.

In such action, under the statute (sections 5398, 5399, 2 Comp. Laws) providing an action for damages to a parent against one selling, giving, or furnishing intoxicating liquors to a

minor, a charge that plaintiff must establish a "sale" in order to recover, given after a request to charge that plaintiff could recover by showing a "sale, giving, or furnishing" of said liquors, was misleading and prejudicial, though plaintiff's counsel did not object to it when given, when considered with improper suggestions by defendant's counsel during the trial of evidence not properly in issue, though such evidence was excluded.

3. TRIAL—ARGUMENT OF COUNSEL—MATTERS NOT WITHIN ISSUE.
In an action under the civil-damage act by a mother for damages for selling intoxicating liquors to her minor son, suggestions by defendant's counsel, in examining jurors and in asking questions of witnesses, that plaintiff's motive in suing defendant was to harass him because his saloon had interfered with a competitor occupying a building owned by plaintiff's husband, were prejudicial, where, although the questions were excluded, nothing was said as to the improper suggestions in the charge.

4. INTOXICATING LIQUORS—CIVIL DAMAGES—EVIDENCE.
Evidence that plaintiff's husband rented a building for saloon purposes and was a surety upon a liquor dealer's bond was immaterial to the issue; plaintiff's connection with such facts not being shown.

5. SAME—CIVIL DAMAGES—EVIDENCE—MITIGATION OF DAMAGES.
In such action, it is proper to prove, in mitigation of damages, that the minor son was in the habit of becoming intoxicated prior to the time when it is claimed such liquors were furnished.

6. SAME—CIVIL DAMAGES—EVIDENCE—CONTEMPORANEOUS SALES.
When, in such action, the plaintiff proves specific acts of intoxication, and defendant denies having made any sales, it is competent to prove that the intoxication was, in fact, caused by liquor furnished by another; but neither as a defense to the action, nor for the purpose of dividing with another the liability imposed by the statute, may prior or contemporaneous sales be considered.

Error to Kent; Mayne, J., presiding. Submitted November 10, 1908. (Docket No. 137.) Decided December 21, 1908.

Case under the civil-damage act by Lena Liebler against Isaac W. Carrel for the sale of intoxicating liquor

to plaintiff's minor son. There was judgment for defendant, and plaintiff brings error. Reversed.

*Fred P. Geib*, for appellant.

*Richard L. Newnham* (*E. A. Maher*, of counsel), for appellee.

OSTRANDER, J. The plaintiff is the mother of Orr Liebler, who attained his majority December 8, 1907. Defendant is the proprietor of a hotel at Caledonia, and in connection with the hotel, he maintains a bar for the sale of liquors. This suit was begun in August, 1907, to recover damages occasioned by the selling and furnishing to the minor by defendant and by his agent spirituous, malt, brewed, and fermented liquors. It appears that the case was tried at the December, 1907, term of the circuit court for the county of Kent, resulting in a verdict for the plaintiff for the sum of $900; that defendant moved for and obtained a new trial upon the ground that the jury had been erroneously instructed. This is the second trial of the case, the result of which was a verdict for the defendant. Plaintiff moved for a new trial, which the court denied, and has brought the record of the proceedings of the trial into this court for review.

The testimony on the part of plaintiff tended to show that her son procured liquors at defendant's place of business at various times from May, 1906, to July 8, 1907, some of it after defendant had been notified by his parents not to sell him liquor and after he had been informed by them that the young man was an infant. Some of this he paid for, some of it was furnished to him at the bar, but was not, it appears, sold to him.

The attorney for the plaintiff presented among others the following request to charge:

"In this case, if the plaintiff has established a sale or giving or furnishing of intoxicating liquors to said minor at any time within the period complained of, by the defendant or any of his barkeepers or employés, then plain-

tiff is entitled to recover at least the sum above named [$50], and she is so entitled to recover if only one such sale is established by the evidence and whether defendant personally knew of such sale or not."

The court instructed the jury in part as follows:

"There are two facts in this case which the plaintiff must establish by this fair preponderance of the evidence to enable her to recover: *First*, that Orr was a minor; and, *second*, that the defendant made sales of intoxicating liquors to him. When I say 'defendant' in this connection, I mean not that he himself personally made these sales, but that he made them either himself or by his agents or servants or bartenders, because in this action he is responsible for the actual damages which the plaintiff sustained, provided the sales were made by his bartenders. If you should find that the plaintiff has established the fact of sales by the defendant to her minor son, then the statute gives her $50 as the minimum amount of a verdict. In other words, if you find from the evidence that these sales were made, then you must return a verdict in favor of the plaintiff for at least $50."

In no portion of the charge did the court refer to furnishing or giving liquors, but the word "sales" was the word employed in each case in this connection. That in employing the word "sales" and in declining to employ the other words, viz., "furnishing or giving," an error was committed, was urged upon the court in the motion for a new trial, and is the ground for an assignment of error argued at length in this court. It is noticeable that in many of the requests to charge preferred upon the part of plaintiff the word "sales" only is employed. It appears that having stated to the jury the claims of the parties, and having in so stating the claims employed the word sales only, the court said to counsel:

"Do I state the case with sufficient clearness, do you think?
"*Mr. Geib:* I think so.
"*Mr. Newnham:* I think so.
"*The Court:* I always ask this so that, if I omit anything under the law, attention may be called to it. There

is not a waiver of any legal right by asking this, except that I want the jury to understand the charge of the court and give you this opportunity."

In denying the motion for a new trial, the learned judge says that, if the attention of the court had been called to the omission to use the words "furnishing" and "giving," the error would have been corrected, and that he was satisfied that the failure to employ those words did not prejudice the plaintiff. It is not disputed that the request to charge above set out correctly states the law. No one can read the record without being strongly impressed that plaintiff's son procured liquor at defendant's place of business. It is true that the reputation of the son for truth and veracity was attacked, and was shown by several witnesses to be bad. His general character was assailed, and the testimony introduced on the part of defendant tended strongly to discredit all testimony given by the son in behalf of the plaintiff. It had, however, little, if any, bearing or effect upon that given by some other witnesses for the plaintiff, who testified positively to the fact that the young man was furnished with liquors at defendant's hotel. If no other error appeared, we should be inclined to hold counsel for plaintiff responsible for what appears to be a mere inadvertence on the part of the court in the use of words. We are impressed, however, in view of the matters now to be referred to, that the jury may have been governed by the precise words employed by the court.

It was brought to the attention of the jury by the defendant that there was and had been another saloon in the village in a building owned by the husband of the plaintiff, and that her husband was one of the sureties upon the liquor bond of the men who conducted the saloon; that the husband was addicted to the use of liquor; that another son of plaintiff had some connection as bartender or otherwise with this saloon and also with the defendant's saloon; and that the minor son had at

different times procured liquor at this other place of business.

After plaintiff's counsel had passed the jury for cause and counsel for the defendant had proceeded to examine them, the following took place:

"May it please the court and gentlemen of the jury: In order to perhaps refresh the recollection of some of you, you might have read something about some of the circumstances, I will state that Mr. Carrel, the defendant here, is the man that keeps the hotel in the village of Caledonia; that some time about a year ago there was another saloon there; that there was trouble at Caledonia in regard to granting a license to this other saloon, and an ordinance was made—

"*Mr. Geib* (interrupting): I will interpose an objection to the statement of counsel. The matter that is being stated by counsel is something that is incompetent in the trial of this case, and irrelevant to the issue here altogether.

"*The Court:* I did not notice. I presume counsel in this preliminary opening statement will be careful not to go outside.

"*Mr. Newnham:* It is only to bring the attention of the jury to something which they may perhaps have brought.

"*The Court:* I don't see how that can assist the jury, any answer to that question.

"*Mr. Newnham:* It might bring to their mind a recollection of some of the circumstances which will be up in this case.

"*The Court:* I think I would keep myself within the facts here."

Later, during the examination of Juror John Alger, by Mr. Newnham, the following occurred:

"*Q.* Mr. Alger, you reside in the city?
"*A.* Yes, sir.
"*Q.* Your business is grocer?
"*A.* Yes, sir.
"*Q.* Did you hear the statement of what this case was about?
"*A.* Yes, sir.
"*Q.* Now, I ask you whether you have read anything in the papers regarding the trouble about granting another saloon license there?

"*A.* Not that I know of.

"*Mr. Geib:* I take an exception to these remarks.

"*The Court:* You may take an exception.    I think this question is proper to find out his knowledge as to the local situation.    I *do* not *think* it *will prejudice* the issue.    (Exception by Mr. Geib.)"

Upon cross-examination of the young man, Orr, and in answer to an objection made by counsel for the plaintiff, counsel for defendant made the following statement:

"I think there will be circumstances which will show that the father is interested in this case before we get through."

And, having made it appear that one of the men who kept the saloon in the place owned by the witness' father was named Frey, the following occurred:

"*Q.* Now, your father was on Mr. Frey's bond there as a saloon keeper, was he not?    *    *    *

"*Q.* Now, did you know of an effort being made there by the village authorities to prevent the opening of the saloon or the maintaining of the saloon in your father's building at one time?

"*Mr. Geib:* I object to that as immaterial, irrelevant, and incompetent.    It don't make any difference.    It has no bearing.    [Question read.]

"*The Court:* Objection sustained.

"*Mr. Maher:* I think, your honor, if I may be permitted to say something, that this is a matter of some importance, and that it *is* really the motive in this suit.    And it seems to me that on cross-examination we would have a right to go into it.

"*Mr. Geib:* If your honor please—

"*The Court:* I will hear Mr. Maher first.

"*Mr. Maher:* We expect to discredit the testimony of this witness on every material point, and this matter is, as I understand it, the motive for the bringing of this suit.

"*The Court:* I cannot at the present moment see the relevancy even upon that theory.

"*Mr. Maher:* Well, the relevancy would, perhaps, appear in this way.    While Mr. Carrel was not taking an active part in that matter, yet it was imputed to him that he was trying to carry out that purpose.    The village authorities there, if I may be permitted to state my position,

the village authorities there undertook by ordinance to restrict the saloon district.

"*Mr. Geib:* Just a moment, if you will let me interrupt for a moment. I object to statements of this kind being made here in the presence of the jury, and ask that if this question is to be discussed at any length, and these statements to be made, that this jury is to be dismissed, and we settle this matter.

"*The Court:* Counsel will be careful not to transgress the rule in stating this language. I do not think it will embarrass the jury. (Exception by Mr. Geib.)"

Plaintiff's husband, being called as a witness, was asked, on cross-examination, among other things:

"*Q.* How long did this man who bought out Mr. Frey continue to operate a saloon there in that building?

"*Mr. Geib:* I object as immaterial, irrelevant, and incompetent.

"*The Court:* Answer. (Exception by Mr. Geib.)

"*A.* Well, he quit some time in April. He quit before the 1st of May.

"*Q.* He quit before the 1st of May. Was there something done by the village authorities there to prevent the operation of a saloon there in your building?

"*Mr. Geib:* I object as immaterial, irrelevant, and incompetent.

"*The Court:* You may answer by ' Yes' or ' No.'

(Exception by Mr. Geib.)

"*A.* Yes.

"*Q.* When was that?

"*A.* That was about the time that Mr. Poff quit. * * *

"*Q.* Is there a saloon running in your building there now in Caledonia village?

"*A.* Yes, sir.

"*Q.* You are on the bond of the man that keeps the saloon there?

" *Mr. Geib:* I object as immaterial, incompetent, and irrelevant.

" *The Court:* You may answer.

"*A.* Yes, sir."

The defendant, called as a witness in his own behalf, stated that, when he went to Caledonia, there was another saloon in the village run by Frank Frey. The examination then continued as follows:

"*Q.* For how long a time did that saloon run, Mr. Carrel?

"*Mr. Geib:* I object as immaterial, irrelevant, and incompetent.    *    *    *

"*The Court:* You may answer.

"*A.* Why, he ran the first year, one year, while I was in business there.

"*Q.* A year ago you obtained another license for the business of the ensuing year, did you?

"*A.* Yes, sir.

"*Q.* At that time was there an application made to carry on business at the other saloon?

"*Mr. Geib:* I object as immaterial, irrelevant, and incompetent.

"*The Court:* Objection sustained.

"*Q.* Was a license refused that saloon by the village board?

"*A.* It was refused; yes.

"*Mr. Geib:* I object as immaterial and irrelevant.

"*The Court:* The objection is sustained. The answer may be stricken out.

"*Q.* Was that saloon the one that was conducted in Liebler's building at Caledonia?

"*Mr. Geib:* I object on the same ground.

"*Mr. Newnham:* I think it is material. It shows the animus of this prosecution.

"*The Court:* The objection is sustained.

"*Q.* Do you know whether there was a saloon district made in Caledonia whereby this other saloon was put outside of the district?

"*Mr. Geib:* I object to that as leading, and as incompetent, irrelevant, and immaterial.

"*The Court:* Now, I think that this would be a proper defense, providing you connect Mrs. Liebler with it in any way. I think you may state in what way you expect to connect her with it.    *    *    *    The objection is sustained."

No attempt was made to connect the plaintiff with the matter, whatever it was, to which these repeated statements refer, except to prove by her that the family derived revenue from the rental of the building occupied by the other saloon. It does not appear that defendant was responsible for any action of the village authorities which

affected the tenants of plaintiff's husband. When the rulings of the court are considered, it is evident that defendant relies upon something besides evidence to support the conclusion which is stated in his brief as follows:

"The case is simply one which was brought by the plaintiff because the business of conducting a saloon in the building of her husband was interfered with, thereby depriving the family of certain rents which went to the support of the plaintiff, and incidentally it is claimed that the defendant, as he owned the hotel and the other place of business, was responsible for it. The whole animus of the case was to get even with the defendant and the evidence conclusively shows it."

If, in the opinion of counsel, the questions asked and the statements made by counsel lead to this conclusion, it may be assumed that the jury were in like manner affected.

Plaintiff claimed damages for injury to her feelings, and for no other loss or injury. That she was entitled to recover $50 damages if liquor was sold or furnished to her son by defendant or his agents, is not denied. To this point, at least, her motive in bringing her suit would be immaterial. In proceeding to determine whether a greater sum should be awarded, the jury would be governed necessarily by evidence tending to prove, and to disprove, the fact that her feelings had been outraged by the conduct of defendant. We are not prepared to say that the defendant might not show in mitigation of damages, in excess of $50, that the plaintiff had conspired with persons competing with him for an opportunity to do business in a particular community at whose places the minor habitually procured liquor, to harass him. See *Cramer* v. *Danielson*, 99 Mich. 531. But, if a defendant desires to pursue such a course, he should enter upon it openly, tendering the issue to the plaintiff and accepting the consequences of defeat. No such issue was tendered, either by questions propounded or by offers of testimony. The rulings excluding the testimony sought to be elicited

were right and were to have been expected.     We are impressed that the rulings did not avert the mischief which the suggestions of counsel were calculated to produce. Nothing was said upon the subject in the charge.

Testimony showing the drinking habits of the husband of the plaintiff was wholly irrelevant.     In view of admissions made by counsel for the plaintiff, we are not called upon to discuss the point.     It was entirely immaterial to the issue that plaintiff's husband rented a building for saloon purposes and was surety upon a liquor dealer's bond. There was no testimony tending to prove the assent of the plaintiff to his dealings or her sympathy with the business of selling intoxicating liquors.     This is an adversary proceeding to which he is not a party.     It will not be presumed that the plaintiff is insensible to the effects of liquor upon her children because her husband supports the business of selling liquor.     The court, over the objection of plaintiff, permitted the introduction of testimony of prior sales and of sales during the period when it is claimed the defendant was selling liquor to the minor made by others than defendant.     Without setting out the testimony and without considering the exceptions in detail, it is sufficient to say it is competent for defendant to prove that the minor was in the habit of becoming intoxicated prior to the time when it is claimed he furnished him liquor. *Bailey* v. *Briggs*, 143 Mich. 303.     Whether such testimony would tend to mitigate the damages in a particular case would depend upon the other circumstances disclosed. It is easily conceivable that it might have an opposed tendency in cases where the liquor seller had been given warning by the parent.     We are of opinion, also, that, when the plaintiff proves specific acts of intoxication and the defendant denies having made any sales, it is competent to prove that the intoxication was, in fact, caused by liquor furnished by another.     But neither as a defense to the action, nor for the purpose of dividing with another the liability imposed by the statute, may prior or contemporaneous sales be considered.

It is not likely that other matters discussed in the briefs will arise upon a new trial.

For the errors pointed out, the judgment is reversed, and a new trial granted.

MONTGOMERY, HOOKER, MOORE, and McALVAY, JJ., concurred.