GRAND RAPIDS BREWING CO. v. PETTIS.

1. FRAUDULENT CONVEYANCES—BILL OF SALE AS MORTGAGE.

In an action of replevin, a plaintiff corporation, which claims title to a stock of goods under a bill of sale executed by one of its customers, a hotel keeper, in the business of selling intoxicating liquors, and which is shown by evidence in the case to have taken the conveyance as security for a debt, leaving the property in the possession of the grantor, without recording its evidence of title in the office of the township clerk, is properly denied the right to recover the goods as against an officer who levied thereon in behalf of a judgment creditor of the hotel keeper, since the evidence tends to support the contention of defendant that the property was transferred in fraud of the creditors, and the transaction was presumptively fraudulent under 3 Comp. Laws, §§ 9520, 9521.

2. SAME—TRIAL—CONDUCT OF COURT—APPEAL AND ERROR.

The action of the trial judge in asking of a witness who advised the landlord as to his exemptions and who had also acted as attorney for plaintiff, as to his theory of the right to exemptions, was not prejudicial, in view of the charge which instructed the jury that the acts of such witness were not binding on the plaintiff except to show the acts done by them in conjunction.

3. SAME—EXECUTIONS—RIGHT OF OWNER.

The plaintiff's right to a judgment, in an action of replevin involving its title to the property, could not be affected by the defendant's omission to prove that the costs for which the execution was issued were properly taxed.

4. TRIAL—CONDUCT OF COUNSEL—CROSS-EXAMINATION.

In cases which involve the good faith of a party, the extent of cross-examination bearing on the question is discretionary.

5. SAME—CROSS-EXAMINATION—COLLATERAL MATTERS.

Inquiries as to immaterial matters, which are answered favorably to the appellant and not objected to at the time or presented on motion for a new trial, do not constitute reversible error.

Error to Kent; Perkins, J. Submitted January 18, 1910. (Docket No. 84.) Decided February 3, 1910.

Replevin by the Grand Rapids Brewing Company against Edwin Pettis. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

*Maher & Barnard*, for appellant.

*Fred P. Geib*, for appellee.

OSTRANDER, J. The defendant is under-sheriff of Kent county. He executed a writ of *fieri facias* issued to collect a judgment for costs in favor of Lena Liebler and against Isaac W. Carrel by seizing certain chattels found in the possession of said Carrel and used by him in conducting his business of keeping a hotel and a bar therein for the sale of liquors. The household furniture of Carrel was not seized. The seizure was made on Saturday. On the following Monday the judgment debtor claimed the right to some of the chattels as exempt from execution and defendant set aside, upon his demand, liquors and cigars of the value of $250, and also furniture used in conducting the hotel, not the private household furniture of Carrel, of the same value. Plaintiff, claiming to own the chattels used by the judgment debtor in conducting the hotel, took those not set out as exempt by a writ of replevin. The replevin suit coming on to be tried, a verdict and judgment for the value of the chattels taken in the replevin suit was rendered for defendant. Plaintiff moved for a new trial, which was denied.

Testimony on the part of plaintiff tended to prove that on April 27, 1908, Isaac W. Carrel occupied and had occupied from May 1, 1906, a certain hotel at Caledonia, Kent county, in which he kept a bar or saloon. The hotel was the property of plaintiff, and Carrel was its tenant. Carrel owned the hotel furnishings and the stock of liquors and cigars. Notice to quit or pay the rent, which was $1,200 a year, had been given to Carrel, March 9, 1908. There was a conference at which the sum due and owing from Carrel to plaintiff was agreed to be $1,500. Four instruments, dated April 27, 1908, were executed.

By the terms of one of them Carrel and his wife sold and transferred to plaintiff the hotel furnishings and utensils for a stated consideration of $1,500. They also conveyed to plaintiff by warranty deed certain real estate at Dorr in Allegan county. The consideration stated in the deed was $1,500. A lease of the hotel for one year from May 1, 1908, for a rental of $55 per month, was executed by the plaintiff and by Carrel. An agreement was made, reduced to writing and executed by plaintiff and by Carrel and his wife, by the terms of which plaintiff agreed to sell to Carrel the hotel furnishings and utensils described in the bill of sale for the sum of $1,500, to be paid at the rate of $30 per month, in advance, on the first of each month, beginning May 1, 1908, and continuing until the said principal sum and interest at the rate of 6 per cent. per annum, payable annually, had been paid. The agreement concludes as follows:

"Said parties of the first part hereby agree to keep the said property insured for the benefit of the said party of the second part in the sum of fifteen hundred dollars; the loss upon which said insurance, if any, shall be payable to the said Grand Rapids Brewing Company. It is further agreed and understood that said party of the first part shall have the privilege of paying the sum of more than thirty dollars per month to be credited to them upon this contract; and it is further agreed that upon the fulfillment of this contract and payment of the sum of fifteen hundred dollars, together with interest thereon, the said Grand Rapids Brewing Company, the said party of the second part, will also deed and convey over to the said party of the first part certain premises in the village of Dorr, county of Allegan, which have been heretofore deeded by the said parties of the first part to the said Grand Rapids Brewing Company."

It appeared from plaintiff's books of account, and from the testimony of plaintiff's witnesses, that prior to January, 1904, Carrel and his brother had carried on a hotel business at Dorr, in Allegan county, upon premises owned by them in common; that plaintiff advanced to Carrel to purchase the interest and property of his brother at Dorr

the sum of $3,000. The hotel property, then estimated to be worth $6,000, was deeded to plaintiff, which gave to Carrel a contract agreeing to sell the property to him, and he agreeing to buy the same for $3,700. The $700 represented a joint note of Carrel and his brother which Carrel agreed to pay, and which was surrendered. An account was opened by plaintiff with the Dorr property. The hotel was destroyed by fire in 1905, and was rebuilt; plaintiff contributing some money. Plaintiff received from insurance on the hotel the sum of $3,090 and from Carrel $335 and advanced him $356.43. The property was later sold to one Sturm for $3,000, which, with the insurance moneys, was credited to Carrel in the account. After the sale of the Dorr property, Carrel leased the hotel at Caledonia, Kent county, and purchased the furnishings and stock at the hotel and in the bar, the furnishings for $1,600 and the stock and supplies for $1,350, a total of $2,950. This sum was paid by the plaintiff and charged against Carrel in the Dorr property account. It further appeared from the testimony given by plaintiff's witnesses that in August, 1907, Carrel was sued by Lena Liebler for damages resulting from the alleged illegal sale of liquors to her infant son, and that in January, 1908, a suit of similar nature was begun against Carrel by one Herp; the charge being an illegal sale of liquor to Herp's daughters. The trial of the *Liebler Case* resulted in January, 1908, in a verdict and judgment of $900 for plaintiff. A new trial was granted, and upon the second trial, in April, 1908, there was a judgment for defendant. This judgment was reversed, and a new trial ordered. 155 Mich. 196 (118 N. W. 975). Costs upon reversal were awarded to the appellant, and it was a writ issued out of this court, directed to the sheriff of the county of Kent, commanding him to make the sum of $222.40 out of the goods and chattels of Isaac W. Carrel, which the defendant in the case at bar was executing when he was interrupted by the service of the writ of replevin.

A demurrer in the *Herp Case* was overruled April 29,

1908. Herp has since recovered judgment against Carrel and, we assume, the sureties upon his liquor bond. Carrel had been and was a customer of plaintiff, which carried on its books an account with him for keg beer and one for bottled beer. There was testimony, all of it from plaintiff's witnesses, tending to prove that plaintiff since some time in 1904 had an intimate acquaintance with the affairs of Carrel, had on one occasion deeded real estate at Caledonia to a person to enable him to become a surety for Carrel on his liquor bond, the surety later reconveying the real estate to plaintiff. No money was paid for either conveyance. It had indemnified at least one other surety.

For defendant, testimony was produced tending to prove that the instrument conveying to plaintiff the hotel chattels was not recorded or filed with the township clerk; that Carrel in May, 1908, advised the supervisor that his assessment ought to be as it had been the year before ($2,000); that he had no other personal property in the township except that contained in the hotel; that he was assessed in 1908 for personal property and paid the taxes thereon for that year. He proved the judgment of the Supreme Court, but did not prove the fact of the taxation of costs other than by the recital in the writ of *fieri facias*.

1. It is a contention of the appellant that the undisputed evidence shows a state of facts which entitled plaintiff to have a verdict directed in its favor. The contention cannot be sustained. There was testimony which tended to prove that both the plaintiff and Carrel and his wife regarded the arrangement of April 27, 1908, not as the payment and extinguishing of an indebtedness, but as one securing payment of an existing and continuing indebtedness. The instruments which were executed are themselves some evidence that, as between the parties to them, security was intended to be taken and given. It is true they contain no undertaking of Carrel to pay; but the contract for a resale of the personal property does contain a defeasance with respect to the conveyance of the real estate when-

ever the sum of $1,500 and interest thereon should be paid.

There is also testimony warranting, if not requiring, the inference that, whether the arrangement was a sale or a mortgage, the purpose of plaintiff was to continue in business a customer who was threatened with financial reverses, to secure itself and still to leave the debtor in the apparent position of an owner of the property in his possession. The stock of liquors and cigars was mortgaged and had been since the previous December. The mortgagee, an attorney of Grand Rapids, was upon various occasions employed by the plaintiff and had been and was attorney for Carrel in some, if not all, of the pending litigation. He prepared the papers executed April 27, 1908, was present at the conference at which it is claimed an adjustment of accounts was made, and he represented the plaintiff and himself in a conference with the defendant after the levy had been made. He advised or told Carrel that he was entitled to exemptions both from the stock of liquors and cigars and from the hotel furnishings, and assisted him in securing them from the defendant sheriff. He replevined the stock of liquors and cigars not set out to Carrel as exempt. His intimate relations with Carrel and with plaintiff indicate that plaintiff had accurate knowledge of the precise financial condition of Carrel and of the litigation which threatened him. It appeared from the testimony of this witness that after the trial of the *Liebler Case* had been postponed at the December, 1907, term of the circuit court, upon his application, he prepared for Carrel a deed of the Dorr property and a bill of sale of these chattels to his (Carrel's) wife, conveyances which were ignored when the arrangement of April 27th was made.

Treated as a sale, the transaction of April 27, 1908, in so far as it related to the personal property, was presumptively fraudulent (3 Comp. Laws, §§ 9520, 9521) as to creditors of the vendor, who are all persons who shall be creditors of the vendor at any time while such goods and chattels shall

remain in his possession or control. The jury were warranted in finding that the arrangement of April 27, 1908, was not a good-faith arrangement made without intent to defraud creditors or those who were likely to become creditors during the continuance of the arrangement.

2. Complaint is made of the conduct of the trial judge in questioning the plaintiff's witness Newnham. It is said he indicated to the jury his opinion concerning disputed facts, asked the witness to state a legal conclusion, assumed that the witness had testified to certain facts when he had not done so, assumed without right that, if the hotel furniture belonged to plaintiff, Carrel would have no right to claim exemption from the execution levy, assumed that acts of Carrel subsequent to the arrangement of April 27, 1908, could be given in evidence against plaintiff.

There is no merit in the criticisms which are made. There can be no doubt about the attitude of the witness on the Monday following the levy when he went to Caledonia. He represented the plaintiff. The fact that he was also personally interested does not change the situation. He was not personally interested in the hotel furnishings. He advised, or told, Carrel that he had the right to demand exemptions out of the hotel furnishings which had been seized. The questions propounded by the court to the witness called for his (witness') theory of the right of Carrel to claim as exempt property which belonged not to Carrel but to plaintiff. An argument is made in this court upon the proposition that Carrel had the right to the exemption growing out of his possessory and contract rights. The proposition is not involved here. Whatever property defendant seized was either taken on the writ of replevin or was set out as exempt. The property was not moved. At the conclusion of the somewhat extended colloquy, the court said to counsel for plaintiff:

"Neither of you have answered the question I have asked as yet. I have charged the jury right now that, in the absence of acquiescence on the part of the brewing

company or their representatives, anything that Mr. Carrel may have done would not be binding upon them so far as their rights and interests in this property are concerned. It only bears upon the question of what the brewing company and Mr. Carrel were doing in conjunction, if anything at all. That is what I wanted to know."

When it is considered that the business in which Carrel was principally engaged must have been the conducting of a hotel with a bar, or else either the hotel business or the saloon business, and that Carrel was claiming and took exemptions or one exemption of twice the value of goods permitted by the statute, with the knowledge, consent, and approval of the representative of plaintiff, it does not appear to us to be reprehensible conduct on the part of the court to make the inquiry which he did, with the caution and advice to the jury which he gave.

3. It is contended that defendant should have proved that the costs of Mrs. Liebler had been taxed in the Supreme Court. We do not see how the point concerns the plaintiff in replevin. The property seized was in the possession of Carrel, and the writ runs against Carrel. Plaintiff's right to interfere depends upon its having the title to or right to the possession of the property which was seized.

4. Conduct of Defendant's Attorney in the Course of the Trial. The matters argued in the brief under this head are most of them, in fact, objections to testimony elicited upon the cross-examination of the plaintiff's witnesses, as to much of which no objection was made at the trial. The good faith of the plaintiff was in issue. In such cases the extent to which cross-examination may be carried must be determined by the trial judge. It is only when an abuse of discretion is made out that reversible error will be found. No abuse of discretion is made out here. The relevancy of the testimony indicating that a third trial of the *Liebler Case* had occurred after the rights involved here had become fixed is not apparent, and counsel for defendant should not have called for the

testimony. It is not perceived how it could have prejudiced plaintiff with the jury.

During the cross-examination of plaintiff's witness Newnham, the following occurred:

"*Q.* Now, Mr. Newnham, when you were there at the brewing company on these different occasions in April, just prior and during the time that the *Liebler Case* was being tried the second time, which, according to the records there, began April 17 or 16, 1908, isn't it a fact that you arranged with the officers of the brewing company to invite the whole jury panel to the brewing company to look over their plant?

"*A.* No, sir.

"*Q.* Didn't you know that the jury went up there at the invitation of the brewing company?

"*A.* I don't know anything at all about it.

"*Q.* Will you swear they did not?

"*A.* I don't know anything about it. It is the first intimation I heard anything about this.

"*Q.* Don't you know it was done in that case?

"*A.* I do not, Mr. Geib.

"*Q.* Didn't you talk it over?

"*A.* No, sir.

"*Q.* And arrange with them with the officers of the brewing company?

"*A.* No, sir; I did not. No such thing ever happened as I know of.

"*Q.* But there was a verdict of no cause of action in that case?

"*A.* There was; yes.

"*Q.* Which was afterwards reversed by the Supreme Court?

"*Mr. Maher:* Counsel should be sure that he has a proper foundation before he asks such questions as that.

"*Mr. Geib:* Well, I will produce what I have if you want to know about it."

Plaintiff's witness Tusch was interrogated in a very similar manner. The answers of both witnesses were entirely favorable to themselves and to the plaintiff, and defendant offered no testimony upon the subject. No objections were made and no exceptions were taken to the cross-examination above set out, nor were objections

made to the cross-examination of the witness Tusch until after answers had been given. It is the contention of plaintiff that this conduct of counsel for defendant, whether objected to or not, is of a character demanding the reversal of the judgment and a new trial. It is possible that, if objections had been made and answers excluded, the situation would have been less favorable to plaintiff. If the fact asked for was supposed to exist, it could be relevant to the issue only upon the theory that plaintiff and Carrel, one of the defendants in the *Liebler Case*, were acting in concert in an effort to defeat Mrs. Liebler's demand at about the time the plaintiff received its bill of sale from Carrel, a conspiracy to which the attorney for Carrel, sometimes also the attorney for plaintiff, was a privy. If the fact called for was not supposed to exist, the conduct of counsel for defendant was most reprehensible. His answer to the admonition of counsel for plaintiff was in any event insinuating and improper, plainly intended as an affirmation that there was in fact a proper foundation for the interrogatories. We have concluded that as counsel for both parties accepted the answers of the witnesses, as the trial court was not asked to interfere, and as the alleged misconduct was not made a ground for the motion for a new trial, we may assume that the jury also accepted the answers of the witnesses as they should have done. We reach this conclusion the more readily because we are of opinion that the undisputed testimony required that a verdict be returned for the defendant.

All of the assignments of error relied upon have been examined. None call for more extended discussion, and none call for a reversal of the judgment.

The judgment is affirmed.

HOOKER, MOORE, McALVAY, and STONE, JJ., concurred.